Defendant's Exhibit 2

# DECLARATION OF CHIEF WARRANT OFFICER DONALD MaC GREGOR, III

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STEPHEN D. PAULK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number: 2:05cv1141 |
| ) | |
| FRANCIS J. HARVEY, Secretary of the ) | |
| Army, and the DEPARTMENT of the ) | |
| ARMY. ) | |
| ) | |
| Defendants. ) | |
| ) | |

### DECLARATION OF CHIEF WARRANT OFFICER DONALD MacGREGOR, III

I, Chief Warrant Officer Four (CW4) Donald MacGregor, III, Mobile, Alabama, make the following declaration pursuant to the provisions of 28 U.S.C. § 1746 and under penalty of perjury. I understand that this declaration will be filed in the United States District Court for the Middle District of Alabama, Northern Division, in the case of Stephen D. Paulk and that this declaration is the legal equivalent of a statement under oath.

1. I am a Logistic Management Officer, GS-13, and I supervise the repair and maintenance operations for UH-60 Black Hawk helicopters at Army Aviation Support Facility (AASF) #3 in Mobile, Alabama. I have been in this supervisory position since December 1999. I am a full-time military technician with the Alabama Army National Guard and currently hold the commissioned officer rank of Chief Warrant Officer Four (CW4). When the selection decision that is the subject of this litigation was made in August 2001, I was a Chief Warrant Officer Three (CW3) and my position was Supervisory Maintenance Test Pilot, GS-12.



DEFENDANT'S EXHIBIT
CASE NO. 2:05cv1141
EXHIBIT NO. 2

2. As a full-time military technician, I must maintain my status as an officer to remain eligible to serve in my current duty position. My normal working uniform is the U.S. Army's battle dress uniform (BDU) or military flight suit. All full-time military technicians normally wear BDUs or military flight suits for the proscribed uniform and all comply with the normal customs and courtesies of the military service in wearing the appropriate military rank and referring to others by their military titles. Military technicians may be called upon to serve alongside activated National Guard or Army units. A number of personnel I supervise have deployed in direct support of U.S. military operations in Iraq. My immediate supervisor in August 2001 was Lieutenant Colonel (LTC) Charles Bonasera.

3. In the summer of 2001 AASF #3 in Mobile, Alabama, had a vacancy for an Aircraft Systems Supervisor. The position was advertised as Announcement Number 01-180 with an issue date of July 20, 2001. This position was directly under my supervision and I was the selecting official. This position required the individual to have military status as a warrant officer or enlisted personnel.

4. Applicants applied directly with our Human Resources Office. That office is responsible for reviewing and ensuring that the applicants meet the minimum requirements to be qualified for the position. The HRO personnel sent me a list of seven applicants, along with their applications, the position description, and guidance that addresses equal employment opportunity policies. I reviewed these materials before conducting interviews with the referred individuals.

5. Prior to conducting the interviews, I discussed my intended interview questions with LTC Bonasera who agreed with the substance of the questions. I also discussed with him who would be eligible for the position based on their rank. I had several specific concerns. First, one of the applicants was Master Chief (CW5) Samuel Paulk. He was senior to me in military rank and I could not supervise an individual who is senior to me according to National Guard

Regulation 600-25, para. 2-1.a. which prohibits grade inversions. A grade inversion is where a person is subordinate in military rank to the person he or she supervises. Secondly, three of the applicants (Staff Sergeant (SSG) Steven Paulk, SSG James Milton and SSG Michael Johnston) were all junior in rank to Sergeant First Class (SFC) Robert Mustin who already worked in the hanger as an UH-60 Blackhawk electronic mechanic. Based upon National Guard regulations, only someone in the rank of sergeant first class to chief warrant officer 3 (CW3) could properly fill this supervisory position as long as SFC Mustin worked in the hanger and I, as a CW3, was the Supervisory Test Pilot. LTC Bonasera told me to interview all applicants for the position.

6. When I conducted the interviews I asked all applicants the same questions and the interview process was equal for each of them. I asked nine questions and I was particularly focused on leadership capabilities as the HRO personnel had determined that all met the necessary position qualifications. I also knew each of the applicants due to my time serving in the Alabama National Guard. My interview of SSG Paulk was fairly short. He did not elaborate on any issues and did not demonstrate to me that he had the leadership potential to organize and successfully lead a group of aircraft mechanics. Of the seven applicants, SSG Paulk was probably the weakest candidate, particularly as it related to his ability to motivate, plan and organize – all essential requirements for a supervisor. SSG Paulk's answers to my questions were short and did not show any enthusiasm or leadership expertise. Based on his interview if SSG Paulk had been the only applicant I would have "non-selected" the position and requested HRO to repost the position. At no point during the selection process did I consider the age of any of the applicants when making my decision.

7. After conducting the interviews, I determined that SFC Cecil Wiggins was the most qualified and best person for the position based on his overall background, knowledge, skills, abilities, training, and education. SFC Wiggins gave thoughtful responses to my questions and

his interview lasted approximately twice as long as SSG Paulk's interview. Since I asked both candidates the same questions, the length of the interview was directly related to the responses by the candidates. By selecting SFC Wiggins I not only selected the best qualified candidate, I also had no issue regarding a grade inversion as he had sufficient rank and could supervise all personnel in the hanger. Since his selection, SFC Wiggins has proven to be a capable leader who has deployed overseas to Iraq and has received tremendous praise for his duty performance. I stand by my assessment of the candidates and my decision to select SFC Wiggins.

8. I know that SSG Paulk has suggested that the Alabama National Guard could have worked around the grade inversion issue. It is correct that even though the National Guard Regulations prohibit a grade inversion, they do not prohibit reassignment of personnel and reorganization of offices to prevent a grade inversion situation. While I did conduct the interviews fairly and selected the best candidate, I was obviously aware of the potential grade inversion issue before I made my selection. Had I selected SSG Paulk, I would have had to reassign SFC Mustin because he could not work for a staff sergeant. I would not have wanted to reassign SFC Mustin or attempt to reorganize our structure as that would have disruptive to our UH-60 repair and maintenance operations.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 03, 2006.

_____
CW4 Donald MacGregor, III

4