# Defendant's Exhibit 5

# REPORT OF INVESTIGATION

TITLE PAGE

NATIONAL GUARD BUREAU
REPORT OF INVESTIGATION

DISCRIMINATION COMPLAINT BY
SSG STEPHEN PAULK

ALABAMA ARMY NATIONAL GUARD

NGB CASE NO. T- 0072-AL-01-02-A

DEFENDANT'S EXHIBIT
CASE NO. 2:05cv1141
EXHIBIT NO. 5

# TABLE OF CONTENTS

## REPORT OF INVESTIGATION IN THE COMPLAINT OF SSG STEPHEN PAULK

### NGB CASE NO. T- 0072-AL-01-02-A

| SUBJECT | PAGE |
|---|---|
| Title page | 1 |
| Table of contents | 2 |
| Identification page | 3 |
| Executive summary | 4 |

**NARRATIVE REPORT**

| | |
|---|---|
| Issues and procedural information | 7 |
| Review of evidence obtained | 7 |
| Statutes, case law, Federal and NGB regulations | 7 |
| Analysis | 9 |

**EVIDENCE AND EXHIBITS** — Tab

**INFORMATION FROM CASE FILE**

| | |
|---|---|
| Formal Complaint | 1 |
| EEOs Counselor's Report and Notice of Rights | 2 |
| Remand of Case | 3 |
| Acceptance by NGB | 4 |
| Authorization for Investigation | 5 |

**DOCUMENTARY EVIDENCE**

Exhibit A:   Vacancy Announcement
Exhibit B:   Referral and Selection Certificate
Exhibit C:   Interview Questions
Exhibit D:   Appointment of Wiggins
Exhibit E:   CP's Application
Exhibit F:   Selectee's Application
Exhibit G:   E-mail from LTC Bonasera
Exhibit H:   Concurrence of Bonasera on Selection
Exhibit I:   Abstract of NGR 600-25/ANGI 36-102

JAN 29 03
NGB-EO

| **TESTIMONY** | **Page** |
|---|---|
| SSG Stephen Dwight Paulk | 3 |
| CW3 Donald MacGregor | 13 |
| LTC Charles Bonasera | 23 |
| LTC Donnie Ray Davis | 32 |
| SSG James Milton | 47 |

## EXECUTIVE SUMMARY

ROI: SSG STEPHEN PAULK           NGB CASE NUMBER: T- 0072-AL-01-02-A

I. **BACKGROUND.** On December 13, 2001, CP, an Aircraft Mechanic with the Alabama Army National Guard, filed a formal complaint based on age, when he was not selected to the position of Aircraft Systems Supervisor at AASF#3 in Mobile, AL. For relief, he seeks retroactive appointment to the position.

II. **EVIDENCE AND ANALYSIS.**

(a) Evidence obtained included testimony of CP, management officials, and witnesses called by the CP, management, and the investigator. CP alleged that the Selecting Official discriminated against him because of his age when he did not select him to the position of Aircraft Mechanic Supervisor.

(b) Management denied that their actions were based on non-merit factors, rather on the qualifications of the candidate selected.

(c) The Title VII theory of discrimination in this case is that defined as disparate treatment. The burden of production in the case in initially on CP to establish a prima facie case in that: (1) he is a member of a protected group, i.e. over the age of 40, (2) he was adversely affected by a management action, and (3) he received treatment different than that awarded similarly situated employees who are not members of his protected group.

(d) Following that, the burden of production shifts to management to articulate a legitimate, non-discriminatory reason for its action. Finally, the burden of proof shifts back to CP to demonstrate that management's articulated reasons were pretextual and to succeed in persuading that a discriminatory reason more likely motivated management or that management's proffered explanation is not worthy of credence.

(e) CP alleges adverse treatment by management and contends that, based on his long experience and qualifications, he would have been selected, but for discrimination because of his age. He also insinuated preselection.

(f) Management denied the allegations and articulated its reason for the actions it took, and maintained that they were not discriminatory and produced witnesses and documentation to support its contention. Management contends that in selecting the best candidate, it has gained the services of a highly motivated individual and denied the notion of preselection.

(g) The Alabama Army National Guard, under the cognizance of the National Guard Bureau has an established discrimination complaint process and an Affirmative Action Plan. The guard has three Aircraft Systems supervisory positions, one encumbered by a 54-year-old, the subject position, and one that is vacant.

S. F. MANSOUR
Investigator for the National Guard Bureau

JAN 1 8 2003

NARRATIVE REPORT

ROI: SSG STEPHEN PAULK         NGB CASE NUMBER: T- 0072-AL-01-02-A

Section I.   Issues and Procedural Information.

1.   In his complaint, dated December 13, 2001 (Tab 1), CP alleges that he was not selected to the position of Aircraft Systems Supervisor WS-10, because of his age.

2.   CP contacted a counselor and had his first interview on November 7, 2001. No resolution materialized and he was given his notice of final interview and right to file a complaint on November 30, 2001. The Counselor's Report appears as Tab 2. The complaint was acknowledged and initially dismissed on February 7, 2002 on the basis that both CP and Selectee were over the age of 40 and, in addition, the fact of CP's and the Selecting Offical's supervisor's ranks invoke NG regulations, stating that military grade inversion is not permitted. Had he been, selected, CP would not have been able to encumber the position. The dismissal was also based on the failure of CP to state a claim.

3.   On review, the NGB reversed the dismissal on the grounds that CP did state a claim and his complaint was properly filed. It remanded the case for acceptance on August 12, 2002 (Tab 3). The notice of acceptance was issued was issued on October 7, 2002 (Tab 4). NGB confirmed the acceptance on August 31, 2002 and authorized the case for investigation on December 16, 2002 (Tab 5).

Section II.   Review of Evidence Obtained.

1. CP alleges that management's adverse actions against him were manifested in his nonselection to the position of Aircraft Mechanic Supervisor because of his age.

2. The examination and analysis considered first the requirement for CP to establish a prima facie case of discrimination, next was a review of Management's articulated reasons for its actions and, finally, an examination of CP's rebuttal in proving pretext.

Section III.   Applicable Statutes, Case Law, Federal and NGB Regulations.

1.   The applicable statutes in this case are Title VII of the Civil Rights Act of 1964, as amended; 29 CFR Part 1614 and NGR 690-600/40-1614. The criteria set forth in U.S. Supreme Court Decisions have provided a systematic approach to be used in the analysis of cases involving alleged employment discrimination.

7

2. This systematic approach involves the establishment of a prima facie case where CP must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion. Once established, the prima facie case raises an inference of discrimination because if the facts remain unexplained, the decision was likely to have been based on impermissible factors. Following this is the shifting of the burden of production to management to articulate a legitimate non-discriminatory reason for its action.

3. Finally, the burden of proof is on the CP to demonstrate that the articulated reason is but a pretext for discrimination and to succeed in persuading that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. (McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973); Board of Trustees of Keene State College v. Sweeney 439 U.S. 24 (1978).

4. Although this analysis calls for the shifting of focus, the burden remains on the Complainant to prove by a preponderance of the evidence that impermissible discrimination occurred. (Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981) and St. Mary's Honor Center v. Hicks 509 U.S. 502 (1993).

5. To establish a prima facie case on the basis of age, the following elements must be met: a) the CP was a member of a protected age group; that is, over 40; (b) he was adversely affected by a management action; and (c) he was treated differently than other similarly situated employees, not in his protected group.

6. What follows is a discussion of the issue raised by CP and the validity of management's articulated reasons for its action as related to the matter complained about. Investigation was focused on the issue in question and statements were obtained from witnesses who primary and direct testimony was deemed pertinent and essential and emphasis was placed on factors considered to be germane and probative.

## SECTION IV. Analysis

1. CP is a 52-year-old Aircraft Mechanic WG-10, with ALANG. He applied for the position of Aircraft Mechanic Supervisor WS-10, advertised on July 20, 2001 (Exhibit A). Seven successful candidates were referred to the Selecting Official, CW3 Donald MacGregor (over 40) for selection. Six of the seven were over the age of 40 (Exhibit B). The Selecting Official interviewed all of the candidates, using the same set of questions (Exhibit C). He selected Aircraft Mechanic WG-11 Cecil Wiggins, who is 42 years of age (Exhibits B and D). The Selecting Official testified that the Selectee demonstrated ability for leadership and organization and a motivation not exhibited by CP. He said he viewed CP's interview as "poor," particularly in the area of motivation, indicating a lack of knowledge in the key elements necessary for planning and organization.

2.  A review of the pertinent applications reveals that CP had approximately 12 years of experience as a mechanic and approximately 5 years of experience as a Quality Control Supervisor (Exhibit E). Selectee's application reveals 12 years of experience as an Aircraft Mechanic, including approximately six years of supervision in planning and organizing assignments for other aircraft mechanics (Exhibit F).

3.  CP stated that he believed that Selectee Wiggins was preselected, in that he had witnessed an e-mail sent by the head of the Army Aviation Support Facility #3, the second line supervisor of the position under review, stating that he preferred a young person for the job. A copy of the e-mail was acquired, and it turns out to be a response to a request by an individual desiring to be noncompetitively transferred to the position, when it became vacant. In that e-mail, LTC Charles Bonasera states that he considered the request for transfer into the position and decided that it was not in the best interest of the many different people/soldiers who might be interested as well. He felt that he must give as many people as possible the opportunity to apply. He adds that he does realize that, for the requester, there would be a significant pay raise and retirement increase and did not blame him for trying. He concludes by saying that he looked forward to seeing him apply for the position as he would be given fair and equal consideration, citing Chapter 23, paragraph 1-2 Equal Opportunity, that it is the policy of the ALANG that all technician positions be filled by the best qualified individuals available and that all technicians have an opportunity to develop and advance to their full potential. CP opined that the use of so-called "retirement increase" in the message meant that the agency preferred a younger person (Exhibit G).

4.  LTC Bonasera, who concurred with the selection (Exhibit H), confirmed original authorship of the e-mail and denied that the selection was improper.

5.  LTC Donnie Davis (over 40) HRO, testified relative to the grade inversion issue, explaining that grade inversions within the full-time workforce is not permitted in that the military grade of the full-time supervisor must be equal or exceed the military grade of personnel supervised (Exhibit I). The Selecting Official, who would supervise the incumbent of the position under review, is an E6 and is junior in military grade to CP, who is an E7.

6.  The court reporters certification of the case appears on page 59 of the transcript.