IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEPHEN D. PAULK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) **Civil Action No.: 2:05-CV-1141-WKW-CSC** | |
| | ) | |
| FRANCIS J. HARVEY, Secretary | ) | |
| of the Army,  and the DEPARTMENT | ) | |
| of the ARMY. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants Dr. Francis J. Harvey, Secretary of the Army, and the Department of

the Army[1] (together hereinafter the "Army"), by their undersigned counsel, moves this

Court to dismiss the Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure

to state a claim, or, in the alternative, summary judgment pursuant to Fed R. Civ. P. 56,

and submits the following in support of this Motion to Dismiss.

## I.  INTRODUCTION

The present action is brought under Title VII of the Civil Rights Act of 1964 (Title

VII), the Age Discrimination in Employment Act (ADEA), ) and under the Older

Workers' Benefit Protection Act  for alleged unlawful employment discrimination.

---

[1]      Defendants assert that Dr. Francis J. Harvey, Secretary of the Army, is the only
proper defendant in this action as he is the head of the agency pursuant to 42 U.S.C. § 2000e-
16(c) and that Defendant Department of the Army is not a proper party defendant and should be
dismissed from this cause of action for lack of jurisdiction.

Plaintiff, Staff Sergeant (SSG) Stephen D. Paulk, a male over the age of 40, alleges the Army wrongfully failed to select  him for promotion.  While his judicial complaint provides scarce details, SSG Paulk was a military technician, a civilian-military hybrid, with the Alabama Army National Guard in the noncommissioned officer rank of staff sergeant at the time of his nonselection.  SSG Paulk claimed during a detailed administrative investigation that the Army discriminated against him on the basis of his age (51) when it selected a *higher ranking* sergeant first class (SFC), who was then  42 years old, for the position of Aircraft Systems Supervisor at the Army Aviation Support Facility (AASF) #3 in Mobile, Alabama.

SSG Paulk's judicial complaint is subject to dismissal as he asserts claims pursuant to the  Older Workers' Benefit Protection Act  for which no relief can be granted and he failed to timely and properly exhaust his administrative remedies under Title VII. Additionally, this case involves matters that are inextricably related to the active duty military status of SSG Paulk and the mission of the Alabama Army National Guard.  As a full-time military technician SSG Paulk held a position that is 'irreducibly military' in nature and, like active-duty personnel, he is without any cognizable claim under Title VII. Accordingly, this Honorable Court lacks jurisdiction to hear such claims even if SSG Paulk had properly exhausted his administrative claims.  SSG Paulk cannot establish the existence of genuine issues of material fact for trial.

## II.  STATEMENT OF FACTS

1.  At the time SSG Paulk applied for the disputed position, he was working as a Wage Grade (WG) 11, step 5 at AASF #1 located in Hope Hull, Alabama. Defendants Exhibit (DEX) 1 at para. I.  (EEO Counselor Report).

2.  SSG Paulk Applied for the position of Aircraft Systems Supervisor, Wage Supervisor (WS) 10 that was located at AASF #3 in Mobile, Alabama[2]. Id. at para. IV.

3.  The selecting official was Chief Warrant Officer Three (CW3) Donald MacGregor. Id. at para. VII.1. and DEX 2 (Declaration of CW4 MacGregor[3]).

4.  CW3 MacGregor selected SFC Cecil Wiggins, age 42, for the position because SFC Wiggins was viewed as the best qualified and he also had sufficient rank to supervise a subordinate that already worked in the hanger. Id at para. 7.

5.  CW4 MacGregor notes that SSG Paulk did not interview well (the poorest of seven candidates) and also noted that SSG Paulk was junior in rank to SFC Robert Mustin who already worked in the shop.  Id. and DEX 1 at para. VII.1.

6.   SSG Paulk contacted an EEO counselor to complain of his nonselection and for his requested relief asked to be awarded the WS-10 salary and benefits and to be permitted to remain working at Hope Hull, Alabama at AASF #1.  DEX 1 at para. V.

7.  As a military organization, the National Guard prohibits circumstances where an

---

[2]      Hope Hull, Alabama is approximately 160 road miles from Mobile, Alabama.

[3]      CW4 MacGregor has since been promoted to the rank of Chief Warrant Officer Four (CW4).

individual with lesser rank becomes the supervisor of someone senior in military rank. Specifically, as set out in National Guard Regulation (NGR) 600-25, para. 2-1.a. DEX 3 (NGR 600-25):

> **Grade Inversions**. Military grade inversion within the full-time work force is not permitted. The grade inversion concept is inconsistent with the nature of the National Guard. The military grade of the full-time supervisor must equal or exceed the military grade of personnel supervised. Unit of assignment or service component of the individual does not change this policy.

8. While it is possible to avoid a grade inversion by reassignment of the more senior individual, CW4 MacGregor notes that had SSG Paulk been selected a more senior SFC already working at AASF #3 would have had to be reassigned, causing the loss of an experienced mechanic and causing further disruption within the hanger. DEX 2 at para. 8.

9. SSG Paulk filed an administrative Equal Employment Opportunity (EEO) complaint with the Alabama Army National Guard complaining of his nonselection on December 13, 2001. DEX 4 (Formal EEO Complaint).

10. An investigator with the National Guard Bureau then investigated SSG Paulk's allegations and found no discrimination.[4] DEX 5 (Report of Investigation).

11. Following the administrative investigation the National Guard Bureau issued a Final Agency Decision (FAD) of no discrimination on February 14, 2005. DEX 6 (Final

---

[4] The National Guard Bureau's investigative authority is derived from 29 C.F.R. § 1614.108, which requires agencies to "develop a complete and impartial factual record" on the matters raised by the complaint. 29 C.F.R. § 1614.108(b). Statements of witnesses are made under oath or affirmation. 29 C.F.R. § 1614.108(c)(2).

Agency Decision).

12.  In the FAD, SSG Paulk was informed that he could either file an appeal within 30 days with the Equal Employment Opportunity Commission (EEOC), Office of Federal Operations (OFO), or he could file a judicial complaint within 90 days.  Id. at p. 3.

13.  SSG Paulk filed an appeal that he dated February 28, 2005.  DEX 7 (Appeal to EEOC OFO).

14.  SSG Paulk's appeal was received by EEOC OFO with a postmark of May 4, 2005, or 75 days after SSG Paulk received the FAD, and was dismissed as being untimely filed. DEX 8 (EEOC Decision).

15.  In the FAD, SSG Paulk was also directed to file a copy of his appeal with the National Guard Bureau Office of Equal Opportunity and Civil Rights.  DEX 6 at p. 3.

16.  The National Guard Bureau Office of Equal Opportunity and Civil Rights received a copy of SSG Paulk's appeal to the EEOC OFO by U.S. mail on May 9, 2005 in a letter postmarked May 3, 2005.  DEX 9 (Declaration of Phyllis Brantley).

17.  SSG Paulk filed a request for reconsideration with the EEOC which upheld their earlier decision on October 27, 2005.  DEX 10 (EEOC Opinion denying reconsideration).

18.  SSG Paulk then filed this suit on December 1, 2005.[5]

---

[5]     SSG Paulk filed an earlier judicial complaint with this court on May 19, 2005 – after he affirmatively elected to pursue his administrative remedies by appealing the FAD to EEOC-OFO in an appeal postmarked May 4, 2005.  The earlier judicial complaint, Civil Action No. 2:05cv464-T, before the Honorable Judge Thompson, essentially made the same allegations as are present in the instant case.  SSG Paulk never served any party and voluntarily moved to dismiss case 2:05cv464-T on June 16, 2005 noting that he was pursuing administrative remedies.

### III. ARGUMENT

**A.  The Only Proper Defendant in an Age Discrimination Claim is the Secretary of the Army, and Therefore Any Other Named Defendants Should be Dismissed.**

SSG Paulk's Complaint improperly lists the Department of the Army as a named defendant in addition to the Secretary of the Army, Dr. Francis J. Harvey.  To the extent that SSG Paulk asserts an age discrimination claim against the Department of the Army it is improperly named as a defendant and should be dismissed from this action.

Although the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a. does not specify the proper defendant in an age discrimination action, courts have consistently held that the procedural provisions of Title VII apply to ADEA actions.  See, e.g., *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979) (holding that, when a provision of ADEA can be traced to a complimentary provision in Title VII, the two statutes should be construed consistently); *Lehman v. Nakshian*, 543 U.S. 156, 163-64, 167. n.15 (1981) (stating federal sector ADEA provisions are patterned after Title VII provisions, and Congress intended procedures in age discrimination actions to be same as those in other Title  VII discrimination actions).   In a Title VII action, the only proper defendant is the Secretary of the Army.  The plain language of 42 U.S.C. § 2000e-16(c) provides that the department head is the sole proper defendant in a Title VII action.  Accordingly, the Department of the Army is improperly named and should be dismissed from this action.

---

The court dismissed the complaint on June 20, 2005, and no action has taken place in that case since that date.

**B.  Claims Under the Older Workers Benefit Protection Act Fail to State a Claim**

In his judicial complaint, SSG Paulk alleges that his rights under the Older

Workers Benefit Protection Act (OWBPA) were somehow violated when he was not

selected for promotion.  The OWBPA amended the ADEA with respect to releases and

waivers of the right of older workers to file ADEA claims and providing them access to

information and other rights that might assist them in legal challenges to their layoffs.

*Currier v. United Techs. Corp.*, 393 F.3d 246, 251 (1st Cir. 2004).  Specifically, the

OWBPA addresses requirements of obtaining knowing waivers of rights from older

workers in relation to their termination.  SSG Paulk does not allege a wrongful

termination and he has signed no waiver of his ADEA rights. Accordingly, he has failed

to state a claim upon which relief can be granted.  See  *Oubre v. Entergy Operations, Inc.*,

522 U.S. 422, 424, 426-27 (1998).  *Griffin v. Kraft Gen. Foods*, 62 F.3d 368, 373 (11th

Cir. 1995).

A detailed discussion of the OWBPA by the 10th Circuit touches directly upon the

issue of whether OWBPA provides a separate cause of action:

> ("The Older Workers Benefit Protection Act . . . establishes requirements
> for the enforceability of employee waivers of ADEA claims made in
> exchange for early retirement benefits."). [Citing  *Lockheed Corp. v. Spink*,
> 517 U.S. 882, 894 n.6 (1996)] This language strongly indicates that the
> OWBPA simply determines whether an employee has, as a matter of law,
> waived the right to bring a separate and distinct ADEA claim. The OWBPA
> does not, by itself, determine in the first instance whether age
> discrimination has occurred. Indeed, Appellants have not cited a single case
> in which a court has held otherwise. Moreover, the legislative history of the
> OWBPA clearly distinguishes between bringing an age discrimination suit
> and a claim that the OWBPA has been violated. The Senate Report

accompanying the enactment of the OWBPA stated that waiver provisions of the OWBPA protect the rights and benefits of older workers by "ensuring that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA." S. Rep. No. 101-263, at 5 (1990), reprinted in 1990 U.S.C.C.A.N. 1509, 1510.

*Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1191-92 (10th Cir. 1999).  See also, *EEOC v. Sears, Roebuck & Co.*, 883 F. Supp. 211, 215 (N.D. Ill 1995)(declining to read a separate cause of action into the OWBPA).  Accordingly, SSG Paulk's claims under the OWBPA must be dismissed as a matter of law.

**C.  SSG Paulk's Age Discrimination Claim Should Be Dismissed for Failure to Timely Exhaust Administrative Remedies.**

Under the ADEA, a federal employee who believes he is the victim of age discrimination has available two avenues of relief.  First, he may file a formal complaint with the EEOC and pursue administrative remedies.  29 U.S.C. § 633a(b); 29 C.F.R. § 1614.101-10.  Alternatively, he may forego administrative action altogether and proceed directly to federal district court, provided that he gives 30 days notice of his intent to sue to the EEOC within 180 days of the occurrence of the alleged discriminatory act.  29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a).

SSG Paulk's judicial complaint is due to be dismissed as he cannot establish that he has timely and properly exhausted his administrative remedies as his postmarked appeal to the EEOC was received more than 44 days <u>after</u> his time to file an appeal had expired.

**1.  Administrative Prerequisites Prior to Filing Suit in District Court.**

While SSG Paulk now proceeds into federal court after receiving the familiar "right to sue" notice from the EEOC, that notice and the prior EEOC administrative decision in his case was one of dismissal for failure to timely file a notice of appeal. Accordingly, SSG Paulk has failed to timely and properly exhaust the administrative remedies that are available to him during the processing of his case and his complaint should be dismissed in its entirety.

It is well settled that a federal employee must timely and properly exhaust administrative remedies prior to pursuing a Title VII employment discrimination action in U.S. District Court. *Brown v. General Services Admin.,* 425 U.S. 820, 833 (1976). Failure to comply with administrative processing requirements, as set out by the EEOC, may result in dismissal of the action. *Id.*; see also *Manning v. Carling*, 786 F.2d 1108, 1109 (11th Cir. 1986); *Griffin v. Carlin*, 755 F.2d 1516, 1529-30 (11th Cir. 1985); *Ray v. Freeman*, 626 F.2d 439, 442 (5th Cir. 1980), *cert. denied*, 450 U.S. 997 (1981).   The Supreme Court has repeatedly upheld dismissal or summary judgment in cases where a plaintiff has failed to raise an administrative discrimination complaint in a timely manner. See, e.g., *Lorance v. AT&T Technologies, Inc.*, 490 U.S. 900 (1989); *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984) (*per curiam*);  *Delaware State College v. Ricks*, 449 U.S. 250 (1980); *United Airlines, Inc. v. Evans*, 431 U.S. 553 (1977).

Pursuant to authority delegated to it by Congress (*see* 42 U.S.C. § 2000e-16(b)), the EEOC has promulgated regulations to provide for the acceptance and administrative

processing of employment discrimination claims in federal employment. *See* 29 C.F.R. §§ 1614.101-.607. Regulations, properly promulgated, have the force and effect of law. *United States v. Nixon*, 418 U.S. 683, 695 (1974). Importantly, the federal government's waiver of sovereign immunity in Title VII is conditioned on compliance with the EEOC's processing requirements; as such, the requirements must be strictly construed. *Irwin v. Veterans Admin.*, 498 U.S. 89, 91 (1990).

The EEOC administrative process is described at 29 C.F.R. Part 1614. At issue in the case at bar is Subpart D, Appeals and Civil Actions (*see* 29 C.F.R. §§ 1614.401-410), which describes procedures for filing appeals to the EEOC and for filing civil actions in U.S. District Court. Specifically, § 1614.401(a) provides that a federal employee may "appeal an agency's final action or dismissal of a complaint." An appeal to EEOC must be filed within thirty days of the receipt of the agency's decision or dismissal. *Id.* at § 1614.402(a).[6] If the appeal is not filed within thirty days, "it will be untimely and shall be dismissed." 29 C.F.R. § 1614.403(c) (emphasis added).

If a federal employee properly exhausts requisite administrative remedies before the agency or the EEOC, he is then entitled to a *de novo* review of the merits of his complaint in U.S. District Court. 42 U.S.C. § 2000e-16(c); *Chandler v. Roudebush*, 425 U.S. 840, 861 (1976). However, the employee may only proceed to District Court, when

---

[6]    The appeal must be filed with the Director, Office of Federal Operations, EEOC; must indicate what is being appealed; and should use EEOC Form 573, Notice of Appeal/Petition. Id. at §1614.403(a).

proceeding under the administrative procedures of ADEA, if the civil action is properly

filed within one of the following deadlines:

> (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal is filed;

> (b) After 180 days from the date of the filing of an individual or class complaint if no appeal has been filed and no final action has been taken;

> (c) Within 90 days of receipt of the Commission's final decision on an appeal; or

> (d) Within 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

29 C.F.R. §1614.407.

SSG Paulk suggests that this civil action was filed within ninety days of receiving

EEOC's final decision on his appeal.  Complaint ¶ 8, 10.  But that decision reaffirmed the

earlier EEOC <u>dismissal</u> of SSG Paulk's EEOC appeal as being <u>untimely</u> filed.  DEX 8,

DEX 10.  In other words, SSG Paulk had already been dismissed from the administrative

process.  The only issue before this Court, therefore, is whether EEOC properly dismissed

the claim.

### 2.  Plaintiff Did Not Timely Initiate Administrative Proceedings.

SSG Paulk was sent a Final Agency Decision (FAD) that was directed to his home

address on February 14, 2005.  DEX 6, DEX 9.  SSG Paulk acknowledged to the EEOC

that he received this notice on February 19, 2005.  DEX 8 at p. 1.  The FAD clearly

advised him that of his right either to file an appeal with the EEOC within thirty days or

file a civil action in U.S. District Court within ninety days.  DEX 6 at p. 3-4.  The FAD

provided SSG Paulk with the appropriate EEOC address and even the facsimile number to file any appeal.  Id at p. 4.  The FAD also directed SSG Paulk to file a copy of his appeal with the NGB Office of Equal Opportunity and Civil Rights.  Id. at p. 3.  SSG Paulk elected to appeal to the EEOC, but did not effectively do so until May 4, 2005, when his notice of appeal was postmarked, well after the thirty-day deadline had passed.  DEX 8. In order to have successfully filed an appeal, assuming receipt of the FAD on February 19, 2005, SSG Paulk's notice of appeal would have had to be postmarked or received at the EEOC by March 21, 2005.   See 29 C.F.R. § 1614.402(a).   The May 4, 2005, postmark resulted in an official filing of the appeal on the 74th day after receiving notice of a finding of no discrimination in the FAD.

In their decision, the EEOC specifically noted that "Complainant has not offered adequate justification for an extension of the applicable time limit for filing his appeal." DEX 8.  Accordingly, on August 29, 2005, EEOC OFO dismissed SSG Paulk's appeal as untimely.  Id.  Although SSG Paulk  may have dated his appeal with a date of February 28, 2005, it is undisputed that the EEOC did not receive the appeal until it was delivered on or after its May 4, 2005, postmark date. It should also be noted that the Federal Rules of Civil Procedure provides recognition of the reliability and the presumptive timely delivery of the U.S. mail.  See Fed.R.Civ.P. 6(e), which provides that service by mail is presumed to be received within three days.  SSG Paulk also did not file a copy of his appeal with the National Guard Bureau until they received a letter from him with a May 3, 2005, postmark.  DEX 9.  There is no evidence that SSG Paulk attempted to file his

appeal to the EEOC by facsimile or by using registered mail or private delivery service to verify and ensure timely filing of his appeal.

SSG Paulk sought reconsideration of the August 29, 2005, EEOC OFO decision and argued that he had sent in his complaint on February 28, 2005.  DEX 10.  The EEOC specifically denied SSG Paulk's appeal, noting that the EEOC properly determined the filing date by looking to the postmark.  Id.  "EEOC Regulation 29 C.F.R. § 1614.604(b) states that '[a] document shall be deemed timely if it is received or postmarked before the expiration of the applicable filing period, or, in the absence of a legible postmark, if it is received within five days of the expiration of applicable filing period.'  Complainant's appeal was not filed with the applicable time period."  Id. (emphasis added).[7]

### 3.  Plaintiff Cannot Justify Equitable Tolling for his Filing Deadlines.

SSG Paulk can present no justification to warrant an exception to the stringent administrative filing requirements established by the EEOC.  While there are certain limited circumstances in which the deadlines in the EEO administrative process may be equitably tolled, such circumstances are not present in this case.  Importantly, "Federal courts have typically extended equitable relief [to discrimination plaintiffs] only sparingly."  *Irwin*, 498 U.S. at 96.  Equitable tolling is *not* available when the Plaintiff simply failed to exercise due diligence.  *Id.*  Equitable tolling is available only in limited

---

[7]    While SSG Paulk clearly failed to timely file his appeal with the EEOC in accordance with their regulations, this judicial complaint is also untimely as it was filed 285days after he received the Army's Final Agency Decision.  This filing is well outside the 90 day period set out in 29 C.F.R. §1614.408.

circumstances, such as when the opposing party has somehow induced or tricked the Plaintiff into missing the deadline. See *Washington v. Ball,* 890 F.2d 413, 414 (11th Cir. 1989). The Eleventh Circuit has noted that "equitable tolling focuses on the employee with a reasonably prudent regard for his rights." *Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559, 1561 (11th Cir. 1987).

In a similar case to the one at bar, a U.S. District Court for the Southern District of New York ruled that a plaintiff who had also claimed to have mailed a letter earlier than its postmark was also not entitled to equitable tolling for failing to meet the EEOC filing deadlines. See *Avillan v. Potter*, 2002 U.S. Dist. LEXIS 2785, 01 Civ. 1648, 2002 WL 252479 (S.D.N.Y. Feb. 21, 2002). Nor have the federal courts been forgiving in other areas where a plaintiff had failed to conform with the administrative process. See *Blount v. Shalala*, 32 F. Supp. 2d 339, 341 (D. Md.) *aff'd*, 199 F.3d 1326 (4th Cir. 1999) and *Adams v. Henderson*, 197 F.R.D. 162, 2000 U.S. Dist. LEXIS 16056, 48 Fed. R. Serv. 3d (Callaghan) 3 (D. Md. 2000) (both cases dismissing plaintiffs' complaints for failure to exhaust administrative remedies when plaintiffs filed formal EEO complaints one day late and outside the 15 day period to file a formal complaint).

### 4. SSG Paulk Did Not Provide Timely Notice of His Intent to Sue.

Having failed to timely exhaust his administrative remedies, a plaintiff can have his age discrimination claims heard by this court only if he satisfied the alternative method of exhaustion under the ADEA, by providing notice of his intent to sue to the EEOC within 180 days of the alleged discriminatory event. 29 C.F.R. § 1614.201(a).

There is, however, no evidence  in the administrative record that SSG Paulk ever provided either the EEOC or the Army with notice of his intent to sue within 180 days of the alleged discriminatory nonselection.   SSG Paulk disputes a promotion that occurred in September 2001; he is thus far beyond the 180 days allowed to provide proper notice to the EEOC.

In sum, the EEOC correctly held that SSG Paulk failed to timely file his appeal and he is clearly outside the time limits to pursue the ADEA's alternate basis for having this Honorable Court hear his claims.  Accordingly,  his judicial complaint should therefore be dismissed for failure to state a claim upon which relief may be granted.

## D.  Status of National Guard Technicians ("Guard-technicians")

Congress created the modern-day civil technicians, or Guard- Technicians, in the National Guard Technician Act of 1968, codified at 32 U.S.C. § 709 ("Act").  Because the National Guard is not a full-time active force, some National Guardsmen are employed as civilian employees so that the day-to-day administrative, training, and logistical needs of the Guard can be met.  These Guard-Technicians are full time employees of the National Guard with responsibility for ensuring the readiness of the National Guard.  32 U.S.C. § 709.

The Act provides that Guard-Technicians be members of their state National Guard, hold the military grade specified for their technician position, and be considered in some respects as federal employees.  32 U.S. C. § 709(b)(1)-(2); § 709(d); § 709(e)(1).  They must wear their military uniform while performing technician duties.  32 U.S.C. § 709(b)(3); *Leistiko v. Stone*, 134 F.3d 817, 818 (6th Cir. 1998)(*per curiam*).  Their

technician and military positions must also be compatible, "because the technician's civilian and military functions are integrated." *Simpson v. United States*, 467 F.Supp. 1122, 1124 (S.D.N.Y. 1979). See also *American Federation of Government Employees, AFL-CIO, Local 2953 v. Federal Labor Relations Authority*, 730 F. 2d 1534, 1544-46 (D.C. Cir. 1984)(hereinafter "*AFGE v. FLRA*"); 32 U.S.C. § 709(b).

The principal reasons for extending federal recognition to technicians was to provide them with federal retirement, fringe benefits, and to ensure their protection from individual liability under the Federal Tort Claims Act. *AFGE v. FLRA*, 730 F.2d at 1536. Guard-Technicians are not generally analogous to other federal employees because "except for federal benefits and tort claims coverage, it was the intent of Congress in the 1968 Technician Act that they be the equivalent of state employees subject to employment, supervision, and control by the state adjutants general.[8]" *Id*. As explained in the legislative history of the Act, "[t]he concept of the technician program is that the technicians will serve concurrently in three different ways: (a) perform full-time civilian work in their units; (b) perform military training and duty in their units; and (c) be available to enter active Federal service at any time their units are called." H. Rep. No. 1823, 90th Cong. 2d Sess., reprinted in, 1968 U.S. Code Cong. and Admin. News 3318, 3319.

"In referring to the National Guard's mission, Congress termed it 'essential' as a matter of 'military policy' that 'the strength and organization of the [National Guard] as an

---

[8]    The Act expressly authorized the supervision of technicians by state adjutants general under regulations prescribed by the Secretaries of the Army and the Air Force. 32 U.S.C. § 709(a)&(c).

integral part of the first line of defenses of the United States be maintained and assured at all times.'" *Wright v. Park*, 5 F.3d 586, 588 (1st Cir. 1993), quoting 32 U.S.C. § 102. The National Guard is "an organization which has no *raison d'etre* save for the military role it serves." *AFGE v. FLRA*, 730 F.2d at 1544. It is " axiomatic" that the National Guard is military in character. *Wright*, 5 F. 3d at 588.

Pursuant to the legislative history of the Act, "the purpose of the technicians was to insure that the *military* mission of the National Guard would be carried out effectively and efficiently." *AFGE v. FLRA*, 730 F.2d at 1545 (emphasis in original). From this it logically follows that "every court having occasion closely to consider the capacity of National Guard technicians has determined that capacity to be irreducibly military in nature." *Leistiko*, 134 F.3d at 821. The Supreme Court held, "Civilian employees of the government also may play an integral role in military activities. In this circumstance, an inquiry into the civilian activities would have the same effect on military discipline as a direct inquiry into military judgments." *Johnson v. U.S.*, 481 U.S. 681 (1987). In short, "so-called civilian technicians are in reality serving in the military." *AFGE v. FLRA*, 730 F.2d at 1545.

**E. National Guard Technicians Are Members of the Military and SSG Paulk's Claims Related to That Military Service Are Not Justiciable and must Be Dismissed.**

SSG Paulk contends he was not selected for the Aircraft Systems Supervisor at the Army Aviation Support Facility (AASF) #3 in Mobile, Alabama. DEX 1. His claim is a nonjusticiable military matter and should be dismissed as it fails to state a claim. The Eleventh Circuit has held that a National Guard technician is a member of the military.

*NeSmith v. Fulton*, 615 F.2d 196 (5th Cir. 1980).[9]  Because SSG Paulk is a uniformed

service member, he has no cause of action under Title VII.  While Title VII does not

explicitly exclude National Guard Technician from its coverage, it does exclude military

service members.  *Gonzalez v. Dept. of Army*, 718 F.2d 926, 928 (9th Cir. 1983); 42

U.S.C. § 2000e-16(a).  The Eleventh Circuit's adoption of the bright-line rule in *NeSmith*,

prevents plaintiff from pursuing his Title VII cause of action.

  In recognition of the hybrid military and civilian status of Guard-Technicians, the

Ninth Circuit has held that Title VII does not apply to them "when the challenged conduct

is integrally related to the military's unique structure."  *Mier v. Owens*, 57 F.3d 747, 750

(9th Cir. 1995), *cert. denied*, 517 U.S. 1103 (1996).  In *Mier*, a Guard-Technician charged

the Arizona Army National Guard with discriminatory acts involving the failure to

promote him to the next military rank, suspension from his civilian job, and retaliation.

*Id.* at 751.  The Ninth Circuit held that the discriminatory actions alleged by the plaintiff

were integrally related to the military's structure and therefore were not within Title VII

coverage.  Although some of the plaintiff's claims involved the civilian aspects of his

employment, the claims could not stand because of the military's unique concerns

regarding discipline and control.  *Id.* at 749-750.

  In this case, it is abundantly clear that even if SSG Paulk had properly and timely

exhausted his administrative remedies, his underlying claims would be subject to

---

[9]  In *Bonner v. City of Prichard*, 661 F.2d 1206 (1981) (en banc), the Eleventh
Circuit adopted as precedent decisions of the Former Fifth Circuit.

dismissal for failure to state a claim. SSG Paulk is alleging that his superior officer, specifically CW3 MacGregor, discriminated against him when a more senior noncommissioned officer, SFC Wiggins, was selected for the Aircraft Systems Supervisor position. Moreover, even had SSG Paulk been selected for this position, the unique military nature of the National Guard would have either precluded him from assuming the duties because there was more a senior noncommissioned officer within his prospective area of supervision or would have required further disruption within the hanger by forcing the more senior SFC to leave. DEX 3 at para. 2-1. Assuming *arguendo* that SSG Paulk had been the most qualified person for the supervisory position, the crux of his problem was not his age, but the fact that he was ***junior*** in <u>military</u> rank to an individual he would have had to supervise. Even SSG Paulk recognizes that military rank has a great deal of impact on selection decisions. DEX 11 at p. 197 (EEOC Testimony of SSG Paulk).

Interestingly, another applicant for the disputed supervisory position was Master Chief Warrant Officer (CW5) Sammy Paulk, who is apparently of no relation to the SSG Paulk, but who also filed an age discrimination complaint regarding the selection decision. During an administrative hearing in CW5 Paulk's complaint, SSG Paulk admitted that CW5 Paulk was better qualified for the disputed position than he himself was. Id. at p. 19. Even if SSG Paulk had timely exhausted his administrative remedies and the court was not precluded from hearing his complaint due to his military status, SSG Paulk could still not prevail as he must show "but for" the alleged discrimination he would have received the position. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1561

(11th Cir. 1988) citing *Koyen v. Consolidated Edison Co. of New York, Inc.*, 560 F. Supp. 1161, 1168 (S.D.N.Y. 1983).   Accordingly, even if SSG Paulk could somehow show evidence of age discrimination, he himself admits that he was not the most qualified applicant and would still not have received the disputed position.[10]

It is simply beyond dispute that National Guard Regulations, specifically, NGR 600-25, para. 2-1.a.,  prohibited the existence of a grade inversion where a more senior ranking military technician is supervised by another military member junior in rank.  In many instances this avoidance of grade inversions is actually likely to benefit older military members as military rank is often heavily determined by years of service. Ultimately, however, this case raises the very same issues that are integral to a military environment as discussed in *Miers* and it is beyond dispute that a military rank grade inversion, not age, that was clearly a significant factor in the selection decision.

## IV.  CONCLUSION

For the foregoing reasons, this case should be dismissed with prejudice for failure to state a claim or for lack of subject matter jurisdiction.

---

[10]    CW4 MacGregor notes that he would not have selected SSG Paulk even if he had been the only applicant for the position as he did not evidence the skills and abilities to be a successful supervisor.  DEX 2 at para. 6

Respectfully submitted this the 17th day of February, 2006.

LEURA G. CANARY
United States Attorney

By: s/R. Randolph Neeley
R. RANDOLPH NEELEY
Assistant United States Attorney
Bar Number: 9083-E56R
Attorney for Defendant
Post Office Box 197
Montgomery, AL  36101-0197
Telephone No.: (334) 223-7280
Facsimile No.: (334) 223-7418
E-mail:  **rand.neeley@usdoj.gov**


OF COUNSEL:

Lt. Col. Michael E. Hokenson
U.S. Army Litigation Division
901 North Stuart Street, Suite 401
Arlington, VA 22203-1837
Michael.Hokenson@hqda.army.mil
(703) 696-1606

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 17, 2006, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system and placed a copy of same in the

United States mail, first class postage affixed, addressed to:

Stephen D. Paulk, *Pro Se*
1786 Hillabee Rd.
Ramer, AL 36069

s/R. Randolph Neeley
Assistant United States Attorney