IN THE MIDDLE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2006 MAY -1 P 4: 23

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| Stephen D. Paulk | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No.:2:05-CV-1141-WKW-CSC |
| v. | § | |
| | § | |
| | § | |
| Francis J. Harvey, Secretary | § | |
| of the Army& the Department | § | |
| of the Army | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS
MOTION TO DISMISS, OR IN THE ALTERATNIVE, FOR SUMMARY JUDGEMENT**

Plaintiff, Stephen D. Paulk, moves this Court to deny the defendants'
motion to dismiss or for summary judgment or in the alternative to
stay the defendants' motion pending the defendant response to this
Honorable Courts' April 14 2006 order for the Defendants to respond
or produce documents.  The defendants' motion to dismiss on the basis
that the Plaintiff failed to state a claim pursuant to Fed. R. Civ.
P. 12 (b) (6) is due to be and should be denied.  Moreover, the
defendant's motion for an alternative summary judgment pursuant to
Fed R. Civ. P. 56, is due to be and should be denied.  The Plaintiff
submits the following in support of this response to the defendants'
motion.

I.    INTRODUCTION

The Plaintiff's cause is brought under the provisions, Title VII, § 703, Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967 (ADEA), 29 U. S. C. §621, The Older Workers' Benefit Protection Act (Pub. L. 101-433), as amended, and the Civil Rights Act of 1991 (Pl 102-166), with jurisdiction posited under 28 U. S. C. § because the case presents a question of federal law.

The Plaintiff, Stephen D. Paulk is and was at all times relevant hereto in the ADEA protected age group (PAG). The Plaintiff applied for the position of Aircraft Systems Supervisor (WS 8801 10) and was deemed qualified for the job by the AL HRO and despite these qualifications, he was rejected based on illegal discriminatory criterion. The Defendants' disparate treatment has resulted in an adverse impact on the Plaintiff.

The Plaintiff, Stephen D. Paulk was employed by the Alabama Army National Guard as a Military Technician under Title 5 and Title 32 and was at the time of the illegal discriminatory activity employed as a Wage Grade (WG) 11, step 5 at AASF #1 located in Hope Hull Alabama. When he applied for the Aircraft Systems Supervisor position, the Plaintiff was fifty one (51) years of age.

The Plaintiff, Stephen D. Paulk, was a Military Technician (dual status) and was at the time of the discriminatory activity a Federal civilian employee who was employed under section 3101 of Title 5 and/or Section 709 (b) of Title 32 and assigned to a civilian position as a technician in the maintenance and repair of supplies or equipment issued to the armed forces.  As a civilian employee, the

2

Plaintiff's compliant of illegal discrimination based on age is fully cognizable under Title VII and the Age Discrimination in Employment Act (AEDA) and is clearly within the jurisdiction of this Honorable Court.  Moreover, because the defendant's discriminatory activities prevented the Plaintiff from receiving higher compensation prior to his retirement, and thus reduced the Plaintiff's retirement compensation based upon the reduced annual salaries used to calculate the Plaintiff's "high three" for his retirement annuity, the Plaintiff is appropriately seeking relief under the Older Workers' Benefit Protection Act to restore his retirement annuity to the amount he would have received if he had not been illegally discriminated against based upon his age.  The remedies and full relief sought, including, but not limited to those sought under the Older Workers' Benefit Protection Act are necessary to make the Plaintiff "whole" not only for the loss of any and all earnings suffered as a result of the discrimination pursuant to Title VII and AEDA, but also to restore the retirement benefits lost as a result of the illegal discrimination activities as afforded under the Older Workers' Benefit Protection Act.

   The Plaintiff filed an Administrative EEO Compliant for illegal discrimination based upon his age in accordance with procedures prescribed in National Guard Regulation (AR) 690-600 and carefully and properly followed all instructions for filing a timely appeal that were provided by the National Guard Bureau in it's notice of the agency's final decision. When the untimely final decision in the

3

Plaintiff's EEO Compliant was issued by the agency on February 14, 2005, the Plaintiff appropriately and timely filed an appeal on 28 February 2005 with the EEOC via first class US mail in accordance with the directions provided by the National Guard Bureau and was clearly within the prescribed 30 day time limit for filing an appeal with the EEOC.

The EEOC's dismissal of the Plaintiff's appeal of the agency's final decision on August 29, 2005 and the subsequent denial for reconsideration on issued October 27, 2005 were based not on the merits of the Plaintiff's case, but rather rely only upon the EEOC's contention that the Plaintiff's appeal did not comport with EEOC Regulation 29 C.F. R. §1614(b) for timely submission.  However, given the numerous anthrax threats/attacks that caused and continue to cause delays in postal delivery services, and the resultant changes to US postal procedures that have been instituted since the issuance of 29 C.F.R § 16149(b), the EEOC's erroneous assumption that postmarks are an accurate depiction of postal delivery and/or the EEOC's assertion that timely delivery can otherwise be assumed if the applicable filing is received within five days of the expiration of the of the applicable filing period, and/or for that matter, the application of any "mailbox rule," can not and should not any longer be appropriately and or fairly used as the standard in cases involving timely filings in administrative matters filed with the EEOC and/or the National Guard Bureau.  Accordingly, the Plaintiff's civil action which was first filed on May 19, 2005 and then withdrawn

4

and dismissed without prejudice on June 20, 2005, and refiled on
December 1, 2005 after he exhausted his administrative rights is both
appropriate and timely and is correctly filed with this Honorable
Court.

## II.  Statement of Facts

1. At the time of the illegal discriminatory activity, the
   Plaintiff, Stephen D. Paulk was a Military Technician (dual
   status) at AASF#1 in Hope Hull, Alabama and while serving in
   this capacity was a Federal civilian employee of the Department
   of the Army employed under section 3101 of Title 5 and/or
   Section 709 (b) of Title 32.

2. The Alabama Army National Guard issued a statewide Military
   Technician Vacancy Announcement for an Aircraft Systems
   Supervisor on July 20, 2001 which listed the specialized and
   general experience requirements, the knowledge, skills and
   abilities requirements, and the position description
   requirements.  Plaintiff Exhibit 1 (PEX 1).  (Military
   Technician Vacancy Announcement).

3. The Plaintiff, Stephen D. Paulk applied for the position of
   Aircraft Systems Supervisor, Wage Supervisor (WS) 10 at AASF#3.
   Plaintiff Exhibit 2 (PEX2).  (Optional Application for Federal
   Employment (OF 612) of Stephen D. Paulk)

4. The Plaintiff's application was reviewed by the Office of Human
   Resources who deemed the Plaintiff to be qualified and eligible

for the Aircraft Systems Supervisor position, and who included the Plaintiff's name on Merit Promotion Certificate number 01-180 forwarded by Donnie Davis, Deputy HRO on August 10, 2001. Plaintiff Exhibit 3 (PEX 3). Merit Promotion Certificate #01-180.

5. The selecting official, Donald MacGregor, interviewed all seven eligible candidates referred by HRO on the Merit Promotion Certificate number 01-180. MacGregor used nine interview questions. Plaintiff Exhibit 4 (PEX 4). Interview Questions.

6. Cecil Wiggins, a 42 year old Aircraft Mechanic WG-11, was selected for the position of Aircraft Systems Supervisor on August 29, 2001 by Donald MacGregor and the selection was concurred in by Charles A. Bonasera on 29 August 2001. The Plaintiff Exhibits 3 (PEX3), 5 (PEX5), and 6 (PEX 6) pertain. Merit Promotion Certificate #01-180, Selection Notification to Wiggins, and Bonasera concurrence memo.

7. While the MacGregor asserts that the selection of Cecil Wiggins was based upon the results of interviews he conducted (PEX 7, Para 6 &7), the agency failed to demonstrate how the Plaintiff's qualifications evaluation and his standing on the candidates' comparative evaluation ratings were considered by MacGregor in the selection decision. Para 1 in PEX 3 specifically requires the selecting supervisor, MacGregor, to give all eligible equitable consideration, evaluating the data provided on their qualifications and comparative evaluation

ratings, yet there is no evidence that MacGregor used the comparative evaluation ratings although he states in PEX 7, Para 7, that he determined Wiggins was "the most qualified, based on his overall background, knowledge, skills, abilities, training and education". MacGregor's statement directly conflicts with the comparative assessment of Wiggins and the Plaintiff's applications contained in the Report of Investigation, (PEX 12, Section IV, page 8). The ROI states "that a review of pertinent applications reveals that the complainant (Stephen D. Paulk) had approximates 12 years of experience as a mechanic **_and_** approximately 5 years of experience as a Quality Control Supervisor, while the selectee's (Wiggins) application reveals 12 years of experience as an aircraft mechanic **_including_** approximately six years of supervision," thus clearly demonstrating that the Plaintiff was more qualified for the position in question. Moreover, in PEX 8, Robert Mustin who worked with Wiggins from 1987 to 2005 says "Cecil Wiggins was clearly not the most qualified candidate for the Aircraft Systems Supervisor. Prior to this selection, Wiggins had no previous supervisory or management experience except what he gained through assignments as a temporary phase crew leader… which were not competitively awarded based on merit."

8. In PEX 7, Para 6, MacGregor opines that he did not consider the age of any the applicants in making his decision. Yet, it is

clear that management wanted someone younger for the position and Wiggins, because he fit the bill, was given unfair advantages in the selection process. In PEX 8, James Milton who first met Cecil Wiggins in the early 80's while working at AASF #3, notes that "Cecil Wiggins was pre-selected for the Aircraft Systems Supervisor position and age was part of the reason. Management wanted someone younger who could work longer and Wiggins was given preferential treatment that gave him an unfair advantage in the selection process." Wiggins is not only notably younger (42 years of age) than the Plaintiff (51 years of age), he looked much younger in his appearance than did the Plaintiff. Milton, in PEX 8, states, "With the selection of Wiggins who looks much younger than the other WG-11s, management continued its practice of filling supervisor positions with younger, less experienced people." The agency's record of promotions and selections going to younger, less qualified personnel clearly indicates a pattern of discrimination based upon age. Robert Mustin, *PEX9)* states, "Age appears to be an issue with the selection of supervisory personnel at AASF#3 and every supervisory position goes not to the most qualified, but to someone younger who will be able to work for a longer time."

9. While the Defendants' posit that the prohibition on military grade inversions would have prevented the Plaintiff, Stephen D. Paulk from holding the position of Aircraft Systems Supervisor

even if he had been selected for the position, MacGregor admits in PEX 7 that "it is possible to avoid a grade inversion by reassignment of the more senior individual" and both Mustin in PEX 8 and Milton in PEX 9 cite instances of military grade inversions they have observed which clearly indicates that the agency not only avoids grade inversions by reassignments when it so desires, but that it also permits instances of grade inversions to persist when it suits their interest.

10.  The Plaintiff, Stephen D. Paulk, initiated an informal EEO complaint based on age discrimination on 31 October 2001 and filed a formal EEO complaint with the Alabama Army National Guard on December 14, 2001. *Plaintiff Exhibit 7 (PEX 7) and Plaintiff Exhibit 8 (PEX 8). Plaintiff's e-mail notification of intent to file EEO complaint and NGB Form 713-5-R filed December 13, 2001.*

11. The Plaintiff received two notices form the Alabama State Military Department on February 7, 2002: one notifying him that his EEO complaint was received and the other notifying him that his EEO complaint was dismissed based on National Guard Regulation (AR) 690-600, paragraph 4-10a (1) and (2) and for failure to state a claim alleging that had the Plaintiff been selected for the position, he would not have been able to fill the position due to military grade inversion and because both the selected individual, Cecil Wiggins, and the Plaintiff were in the same protected EO group. PEX 8 and PEX 10

10. On review, the National Guard Bureau reversed the dismissal on the grounds that the Plaintiff did if fact stated a claim and that his complaint was property filed.  The case was remanded for acceptance on August 12, 2002 and by memorandum dated October 7, 2002, the Plaintiff was notified that as a result of a review by the National Guard Bureau, it was determined that his complaint was improperly dismissed and that his complaint had now accepted.  PEX 11.

13. An investigator was appointed on January 7, 2003 and a Report of Investigation was issued by the investigator, S.F. Mansour on January 18, 2003.  In the Report of Investigation, management contended that in selecting the "best candidate, they had gained the services of a "highly motivated individual."  PEX 12.

12. The Plaintiff was notified by letter dated May 16, 2003 that the NGB investigation had been completed and that the Plaintiff could request an immediate final decision.  (PEX 13).

13. The Plaintiff was notified of the Final Agency Decision (FAD) by letter dated 14 February 2003. In the Analysis and Findings of the FAD, the agency states that management had contended that "in selecting the best candidate, they had gained the services of a highly motivated individual."  Moreover, the FAD contained a description of the Plaintiff's rights of appeal, specifically stating that the Plaintiff could appeal the FAD within 30 calendar days of its receipt and instructing that the appeal must be in writing and may be filed by mail, personal delivery, or facsimile. PEX 13.

14. The Plaintiff filed an appeal of the FAD to the EEOC on February 28, 2005, and in accordance with the instructions provided by the agency in its FAD, mailed his appeal to the EEOC. The Plaintiff' appeal to the EEOC was mailed by the Plaintiff via first class U.S. Mail. PEX 14 & 15 pertains.

15. The Plaintiff received notification from the National Guard Bureau on April 5, 2005 that as of April 4, 2005 NGB-EO-CR had not been made aware of any further action for the complaint and was therefore administratively closing the case. The Plaintiff responded on April 7, 2005 that an appeal had been filed with the EEOC on February 28, 2005, notification of the appeal had been filed with their office, and requested that the case be reopened administratively. The Plaintiff further requested that Ms. Evelsizer notify him in writing of the decision to administratively reopen the case. The Plaintiff received no such response from Ms. Evelsizer. PEX 16 & 17 pertain.

16. The Plaintiff received notification that his appeal had been received by EEOC by letter dated May 11, 2005. PEX 19.

17. EEOC dismissed the Plaintiff's appeal on August 29, 2005 on the basis that the Notice of Appeal was postmarked May 4, 2005 and therefore untimely. The EEOC dismissal notice outlined the Plaintiff's rights for reconsideration if the requests for reconsideration were filed within 30 calendar days of receipt of the dismissal. Moreover, the EEOC dismissal noted the Plaintiff's

right to file a civil action within 90 calendar days from the date of receipt of the dismissal notice. PEX 18

18. By letter dated September 5, 2005, the Plaintiff requested the EEOC to reconsider its decision to dismiss his appeal noting that the appeal was timely filed and the Plaintiff was notified by letter dated October 18, 2005 that his request for reconsideration had been docketed for review.  PEX 19 and 20 pertain.

19. The Plaintiff submitted a letter to the commission on October 24, 2005 with information demonstrating that the EEOC decision involved a clearly erroneous interpretation of material fact or law and had a substantial impact on the policies, practices, or operation of the` agency.  Moreover, the Plaintiff noted specifically that he did not wish to waive his right to challenge the EEOC's decision in Federal Court and stated that he wanted to ensure that his right to file a civil complaint was preserved pending the EEOC's decision on the request for reconsideration, noting that the 90 day timeline should not start until the Commission ruled on the request. PEX 21.

20. The EEOC denied the Plaintiff's timely request for reconsideration on October 27, 2005 noting that the Commission's decision is final with no further administrative appeal and stating that the Plaintiff has the right to file a civil action within 90 days of receiving the decision to deny the request for reconsideration. PEX 22  The Plaintiff filed this complaint on December 1, 2005 well within the 90 day timeline prescribed by the EEOC.

### III. ARGUMENT

**A.  Both the Secretary of the Army, Frances J. Harvey and the Department of the Army Are Proper Defendants**

The plain language of 42 U.S.C. §2000e-16(c) provides that the agency or department head is the sole proper defendant in Title VII actions.  Accordingly, the Secretary of the Army, Frances J. Harvey is correctly named as one of the defendants in this action.

Moreover, while the Age in Discrimination in Employment Act (ADEA) 29 U.S. C. does not specify the proper defendant in age discrimination actions, it does articulate that the AEDA statue shall not relieve any *Government agency* (emphasis added) or official of the responsibility to assure nondiscrimination on account of age in employment as required under any provision of Federal law.

The two cases cited by the Defendants in their argument to dismiss the Department of the Army from this complaint are not on point and should not weigh the court to dismiss the Department of the Army as an appropriate Defendant in this matter.  The Defendants' argue that courts have held that the procedural provisions of Title VII apply to ADEA and therefore Congress intended procedures in age discrimination action to be the same as those in other Title VII discrimination actions, and therefore, the only proper defendant in age discrimination cases is the agency or department head as provided for in Title VII.  However, Section 15

(a) of the AEDA provides that personnel actions affecting federal employees "shall be made free from any discrimination based on age" which clearly permits the Plaintiff to bring an actionable cause under AEDA.  On the contrary, in the Defendants' argument that the Plaintiff does not have an actionable cause under AEDA and that the department of the Army is not a proper the defendant, and the Defendants only cite case law that speaks to the AEDA and Title VII procedural consistency specifically with regards to federal employees' right to a jury trial under ADEA.  The courts rulings in *Lehman v. Nakshian* do not address procedural issues with regards to the proper defendant and the courts action in  *Lehman v. Nakshian* in no way can be construed to imply that Title VII provisions regarding the proper defendants under that Title apply to AEDA. Moreover, the defendants cite *Oscar Mayer & Co. Evans* which also does not specifically address the proper defendants in discrimination actions and therefore not on point for their argument to dismiss the action brought against the Department of the Army.  In *Oscar Mayer & Co. Evans,* court specifically addressed the issue of whether Guard technician can bring a cause under Title VII.  The court concluded in *Oscar Mayer & Co. Evans* Guard technicians are a hybrid job entailing both civilian and military aspects, and that claims are actionable under Title VII, but it did not address the procedural consistency of AEDA and Title VII with regards to the proper defendant.  Accordingly, the Department of the Army is properly named and the court should deny the

defendants' motion to dismiss the Department as a proper defendant in this matter.

## B.   Claims Under the Older Workers Benefit Act

The defendant's discriminatory activities prevented the Plaintiff from receiving higher compensation prior to his retirement, and thus reduced the Plaintiff's retirement compensation based upon the reduced annual salaries used to calculate the Plaintiff's "high three" for his retirement annuity  Because the illegal discriminatory actions effected the Plaintiff's retirement and harmed him in so much as he will receive reduced retirement benefits directly as a result of the discrimination action of the defendants, the Plaintiff is appropriately seeking relief under the Older Workers' Benefit Protection Act to restore his retirement annuity to the amount he would have received if he had not been illegally discriminated against based upon his age.  The remedies and full relief sought, including, but not limited to those sought under the Older Workers' Benefit Protection Act are necessary to make the Plaintiff "whole" not only for the loss of any and all earnings suffered as a result of the discrimination pursuant to Title VII and AEDA, but also seek relief under the Older Workers' Benefit Protection Act to restore the retirement benefits lost as a result of the illegal discrimination activities.

## C. Plaintiff's Timely and Complete Exhaustion of Administrative Remedies

1. **Plaintiff Timely and Appropriately Initiated Administrative Proceedings**

2. The Plaintiff filed an Administrative EEO Compliant for illegal discrimination based upon his age in accordance with procedures prescribed in National Guard Regulation (AR) 690-600 and he has appropriately, timely and completely exhausted all administrative remedies before filing this action before this Honorable court.

The Plaintiff first filed an informal complaint with the agency on October 31, 2001 following the selection of Wiggins. The Plaintiff appropriately and timely completed all aspects of the informal complaint process, and upon the agency's inability to resolve the complaint, the Plaintiff filed his formal complaint with the National Guard Bureau on December 13, 2001. Of particular note is that the Plaintiff's complaint was first dismissed by the agency and then reinstated when the agency determined that it had been inappropriately dismissed. The Plaintiff received two notices form the Alabama State Military Department on February 7, 2002: one notifying him that his EEO complaint was received and the other notifying him that his EEO complaint was dismissed based on National Guard Regulation (AR) 690-600, paragraph 4-10a (1) and (2) and for failure to state a claim alleging that had the Plaintiff been selected for the position, he would not have been able to fill the position due to military grade inversion and because both the selected individual, Cecil Wiggins, and the Plaintiff were in the same protected EO group. On review, the National Guard Bureau

/6

reversed the dismissal on the grounds that the Plaintiff did if fact stated a claim and that his complaint was property filed. The case was remanded for acceptance on August 12, 2002 and by memorandum dated October 7, 2002, the Plaintiff was notified that as a result of a review by the National Guard Bureau, it was determined that his complaint had been improperly dismissed.

On May 16, 2003, the agency notified the Plaintiff that the investigation of his complaint had been completed, but the Plaintiff did not receive the Final Agency Decision (FAD) until February 19, 2005, more than 21 months later. The FAD dated February 14, 2005, informed the Plaintiff that he could "appeal the decision within 30 calendar days of the receipt of the FAD", and further instructed the Plaintiff to file his appeal in writing, noting that "*the appeal may be filed by mail, personal delivery or facsimile.*"*(Emphasis added)*. The FAD also required that a copy of the Plaintiff's appeal be sent to the NGB-EEO and to the State EO Manager. Because the FAD instructions focus on the delivery methods for filing the appeal, the clear implication of the FAD instructions is that the appeal is considered "filed" when the Plaintiff executed one of the options for delivery. However, EEOC Regulation 29 C.F.R. ss 1614.604 states that "a document shall be deemed timely if it is received or postmarked before the expiration for the applicable filing period, or in the absence of a legible postmark, if it is received within five days of the expiration of the applicable filing period." Because the FAD dated February 14, 2005 contained incomplete and/or misleading

instructions for filing a timely appeal, the Plaintiff was induced and tricked into believing that his appeal was timely based upon the date he mailed his appeal thus qualifying him for equitable tolling in this matter. See Washington v. Ball, 890 F.2d413, 414, (11th Cir. 1989). Moreover, the Plaintiff raised the issue of equitable tolling in his 24 October 2005 brief in support of his request for reconsideration of the ~~Exec~~ EEOC's dismissal of his appeal, arguing that the agency's erroneous and incomplete instructions for filing appeals with the EEOC was clearly an erroneous interpretation of material fact or law and will have a substantial impact on the policies and practices or operation of the agency since the agency.

Because the Plaintiff complied with the instructions provided in the FAD exactly and precisely when he filed his EEOC appeal on 28 February 2005 by first class mail and sent copies of his appeal via first class mail to NGB-EO and to the State EO Manager, (See PEX _15_ Plaintiff's Certification of date of mailing), he appropriately complied with all requirements of administrative review process and is therefore appropriately before this Honorable court.

Moreover, numerous anthrax and ricin threats/attacks linked to mail contamination have made postal delivery unreliable and have caused, and continue to cause delays in postal delivery services and the resultant changes to US postal procedures that have been instituted since the issuance of 29 C.F.R § 16149(b), make the EEOC's assumption that postmarks are an accurate depiction of postal delivery and/or the EEOC's assertion that timely delivery can otherwise be assumed if

18

the applicable filing is received within five days of the expiration
of the of the applicable filing period, and/or for that matter, the
application of any "mailbox rule," invalid and no longer appropriate
and can not, and should not any longer be appropriately and or fairly
used as the standard in cases involving timely filings in
administrative matters filed with the EEOC and/or the National Guard
Bureau.

Anthrax and ricin attacks and threats linked to mail contamination
began to be reported in 2001 and continued through the time the
Plaintiff filed his appeal as noted in PEX 23. The attacks and
continuing threat have forced changes to the manner in which mail is
processed including, but not limited to an FAA restriction on moving
many first class packages by air thus relegating those packages to
slower overland transport; multiple and redundant screenings of mail
using procedures ranging from x-rays, dog sniffing, filtration
screening, visual inspection by postal workers, irradiation, mandated
quarantine, to screening by military biological detection equipment and
other means, and the abandonment of centralized mail processing
functions and the establishment of multiple off-site mail processing
units,  the requirement for postal workers and mail handlers
throughout the system to have special training and use personal
safety equipment.  These changes and the inherent mail slowdowns make
all previous assumptions about mail invalid and have led some
agencies and other organizations to rethink the impact timing of mail
processing and delivery has on transactions, how their procedures

should be altered to preserve the rights of those impacted. For example, the Department of Energy has recognized that the mail is unreliable and that mail delays may prevent individuals from meeting prescribed deadlines and thus infringing upon the rights of individuals to comment or request to speak at scoping meetings. In recognition of this issue and in an attempt to afford equitable accommodations for its clientele, DOE now publishes a notice of irregular postal delays in its Federal Register notices and advises that submission be sent by facsimile or electronic mail and then followed by regular mailing of the original documents in order to assure compliance with filing dates. (PEX 24).

Unfortunately, there is no indication that the EEOC has acknowledged the problems associated with mail deliveries and has thus failed to initiate action to revise its regulatory guidelines governing timely submissions. Moreover, there is no evidence that either the EEOC or the NGB took any such actions similar to those published by the DOE to ensure that the Plaintiff was made aware of the unreliable nature of the mail system and the need to seek alternative methods to ensure the timely delivery of his appeal. Because the Plaintiff assumed he could rely on the mail system, and absent any direction form either the NGB and or the EEOC to use alternative means to assure delivery, the Defendants' argument that the Plaintiff should have used facsimile, registered mail or private delivery service to ensure timely filing of his appeal is without merit. It should be further

noted that the Plaintiff raise similar objections in his brief in support of his request to the EEOC to reconsider its decision to dismiss his appeal.

In sum, the Plaintiff timely filed his appeal with the EEOC and has stated a valid claim upon which relief may be granted by this Honorable court.

Accordingly, the Plaintiff's civil action which was first filed on May 19, 2005 and then withdrawn and dismissed without prejudice on June 20, 2005, and refilled on December 1, 2005 after he exhausted his administrative rights is both appropriate and timely and is correctly filed with this Honorable Court.

3. **Plaintiff Meets All Administrative Prerequisites for Filing Suit in District Court.**

The Plaintiff's complaint was dismissed by the EEOC in a decision dated August 29, 2005 noting that the Commission may at its discretion reconsider the decision provided that requests for reconsideration were filed within 30 days. The EEOC's decision letter (PEX 18) further stated the Plaintiff's right to file a civil action within 90 calendar days from the date of the receipt of the decision. The decision letter clearly states that filing a civil action will terminate the administrative processing of Plaintiff's

complaint, thus suggesting that the administrative process is not terminated until any request for reconsideration are adjudicated. Moreover, the certificate of mailing notes that the Commission presumes that the decision was received within five (5) calendar days after it was mailed on August 29, 2005. Based only upon this presumption, the Plaintiff's civil action filed with this Honorable court on December 1, 2005 before the expiration of the 90 day deadline. However, it is important to note that the Plaintiff requested the EEOC to reconsider it decision by letter dated September 5, 2005 (PEX 19) and that the EEOC docketed the request (PEX 20). By letter to the EEOC dated October 24, 2005, the Plaintiff asserted that the 90 day timeline to file in Federal Court should not begin until the Commission makes a determination on the request for reconsideration and explicitly noted that he did not wish to waive his right to challenge any decision in federal and stated that he wanted to ensure that his right to file in federal court was deferred pending the EEOC's decision on the request to reconsider. (PEX 21).

The EEOC denied the Plaintiff's request for reconsideration by letter dated 27 October 2005 noting that there was no further right of administrative appeal on the decision to deny the request. The letter further established the Plaintiff's right to file a civil action within 90 days of the receipt of the decision to deny the request for reconsideration. Accordingly, the Plaintiff filled this

action timely and properly after he fully exhausted all
administrative remedies available to him.

### D. Dual Status of National Guard Technicians

The Plaintiff, Stephen D. Paulk, was a Military Technician (dual
status) and was at the time of the discriminatory activity a
Federal civilian employee who was employed under section 3101 of
Title 5 and/or Section 709 (b) of Title 32 and assigned to a
civilian position as a technician in the maintenance and repair of
supplies or equipment issued to the armed forces.  As a civilian
employee, the Plaintiff's compliant of illegal discrimination based
on age is fully cognizable under Title VII and the Age
Discrimination in Employment Act (AEDA) and is clearly within the
jurisdiction of this Honorable Court.

In Mier v. Owens, 57 F.3d 747 (9th Cir.1995), the Ninth Circuit
recognized, "Courts regularly decline to hear lawsuits involving
personnel actions integrally related to the military's unique
structure."  Mier 57 F3d at 749.  However, the court went on to
conclude:

> (i)n some circumstances, personnel actions are not
> integrally related to the military's structure.  Concerns
> regarding military hierocracy and discipline many not be at
> issue in suits alleging discriminatory conduct on the part
> of peers or subordinates.  In addition, actions affecting
> civilian employees may not involve matters considered
> military in nature.  Because Guard technicians are a hybrid

23

job entailing both civilian and military aspects, we

conclude that Title VII coverage of civilians employed by

the military encompasses actions brought by Guard

technicians except when the challenged conduct is

integrally related to the military's unique structure.

The Mier court ultimately decided that Mier's claims were

integrally related to the military's unique structure because they

were based upon his not being promoted to the rank of major.  The

court determined that Title VII does not allow the court to review

decisions regarding the military's promotion of individual serving as

Guard technicians.  See id. At 751.  Mier's suspension from civilian

promotion resulted from a denial of military promotion and so the

suspension likewise could not be reviewed.

However, the Fifth Circuit considered the issue in Brown v.

United States, 227 F.3d295 (5th Cir.2000).  In Brown, the plaintiff

was an Air Reserve technician, a full-time civilian position that

required Brown also serves in the military reserves. Id. At 297.

Brown was charged with misconduct and substandard performance and was

honorably discharged.  Pursuant to his military discharge, Brown was

relieved of his civilian ART responsibilities because he was unable

to meet the positions requirement that the maintain reserve duty

status.  In deciding whether a dual status employee could seek relief

under Title VII, the Fifth Circuit explained that claims by ARTS

"must be categorized as either arising from their position as a

civilian employee of a military department, or their position as a

uniformed service member." Brown, 227 F.3d at 299. The Brown court
then elected to "determine whether a dual-status employee's claim is
cognizable under Title VII according to the lines drawn by the EEOC."
Applying the EEOC's regulations, the court held that "claims arising
purely from and ARTs civilian position are provided for under Title
VII; claims arising purely from an ART's military status, however,
are not cognizable." Id. At 299. Moreover, in Luckett v. Derie,
1075 F.3d 6178 (2nd Cir Court of Appeals, 2002), the court held that
it did not see a meaningful conflict between the positions taken by
the Ninth and Fifth Circuits, and they agreed with both.
Accordingly, the 2nd Circuit Court of Appeals determined that Title
VII protections extend to discrimination actions brought by military
personnel in hybrid jobs entailing both civilian and military aspects
except when the challenged conduct is integrally related to the
military's unique structure. There may be cases in which dual-status
military-civilian employees allege a justiciable Title VII complaint
arising purely from their civilian employment.

Because the Plaintiff is seeking relief from injuries resulting
from illegal discrimination in promotion actions taken in filing a
vacancy for a civilian position of Aircraft Systems Supervisor, Wage
Supervisor (WS) 10, the com plaint arises purely from his civilian
employment and is therefore justiciable under Title VII.

Moreover, the Defendants erroneously and incorrectly allege that
grade inversion would have precluded the Plaintiff form being
selected from the position, stating, "the crux of his (Plaintiff's)

25

problem was not his age, but the fact the he was junior in military

rank to the individual he would have had to supervise." Although,

the Defendants' cite NGR 600-25 prohibition on military grade

inversions, they fail to note that the same regulation provides for

exceptions and waivers to the policy. Moreover, MacGregor in his

declaration (PEX 7) admitted that "even though the National Guard

Regulations prohibit a grade inversion, they do not prohibit

reassignment of personnel and reorganization of office to prevent a

grade inversion situation." Additionally, by alleging that the

Plaintiff would not have been eligible for the position if selected

due to the potential for military grade inversion, the Defendants are

admitting that grade inversion was inappropriately used as "_selective_

_placement criteria_" applied ex post facto to the selection, and was

therefore the military grade inversion issue was used by the

Defendants as a pretext for the illegal discrimination of the

Plaintiff. In fact, the vacancy announcement indicates that the

position is open to officers/ warrant officers/and enlisted, and

while it does specify specific MOSs that the individual selected must

be assigned to, it does not specify any military grade restrictions

for the selectee. Davis (Deputy HRO) in PEX 26 indicates that HRO

does not eliminate or fail to refer an otherwise qualified candidate

based on the potential for military grade inversion, simply because

there are some many options to avoid the inversion or to make the

inversion issue moot before placement of the selectee. He

specifically cites examples of higher ranking personnel being

26

reassigned; retiring or resigning before the placement of the
selectee who would potentially create an inversion situation thus
eliminating what otherwise might be a grade inversion. Davis notes
that there are so many variables.  He even acknowledges that individuals
are often permitted to take a voluntary reduction in their military
rank to avoid a grade inversion if selected for a civilian promotion.
Moreover, both Mustin and Milton (PEXs 8&9) attest to the existence
of military grade inversion situations.

MacGregor in PEX 7 states, "I was obviously aware of the potential
grade inversion issue before I made the selection.  Had I selected
SSG Paulk, I would have had to reassign SFC Mustin because he could
not work for a staff sergeant."  Although MacGregor indicates that he
would not have wanted to reassign Mustin or attempt to reorganize the
structure, his desires are irrelevant as he did not have the
authority to make any decision regarding the reassignment of
personnel or reorganization.  That authority was reserved for NGB
Headquarters and would have necessarily have been based upon the
recommendation of the Facility Commander, Lt Colonel Bonasera.
Bonasera had already indicated his tacit agreement with reassignments
and/or reorganization should the Plaintiff be selected when he
directed MacGregor to proceed with the interviews of all the
candidates, including those who, if selected would present a
potential for military grade inversion despite the concerns raised by
MacGregor and Davis. (PEX 7).  If it is true as the Defendants'
assert, that military rank grade inversion, not age was clearly a

27

significant factor in the selection decision, then it is clear that grade inversion was used as an inappropriate selective placement criteria and was in fact, a pretext the Defendants used to illegally discriminate against the Plaintiff.

### IV.  Conclusion

**For the forgoing reasons, the Plaintiff clearly stated a valid claim justiciable under this Honorable Court.   Therefore, t**he defendants' motion to dismiss on the basis that the Plaintiff failed to state a claim pursuant to Fed. R. Civ. P. 12 (b) (6) is due to be and should be denied.  Moreover, the defendant's motion for an alternative summary judgment pursuant to Fed R. Civ. P. 56, is due to be and should be denied.

_____
Stephen D. Paulk
1786 Hillabee Road
Ramer, AL  36069
334-562-9453

Prose Plaintiff

28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2006, I filed the foregoing with the Clerk of the Court and placed copies of same in the United States mail, first class postage affixed addressed to:

R. Randolph Neeley
Assistant United States Attorney
P.O. Box 197
Montgomery, AL  36101-0197


Lt. Col Michael E. Hokenson
U.S. Army Litigation Division
901 North Stuart Street, Suite 401
Arlington, VA  22203-1837

Stephen D. Paulk
Prose Plaintiff