# Plaintiff's Exhibit __8__

_Declaration of James Milton_

IN THE MIDDLE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Stephen D. Paulk, Plaintiff, | § § § § § § § |
| | §Civil Action No. 2:05cv1141-T |
| v. | § (WO) § § § |
| Francis J. Harvey, Secretary of the Army & the Department of the Army, Defendants. | § § § § § § |

DECLARATION OF Mr. JAMES MILTON

I, James Milton, Mo**bile, Alabama** make the following declaration pursuant to the provisions of 28 U.S.C. § 1746 and under penalty of perjury. I understand that this declaration will be filed in the United States District Court for the Middle District of Alabama. Northern Division, in the case of Stephen D. Paulk and that this declaration is the legal equivalent of a statement under oath.

1. I was employed as a full-time Military Technician with the Alabama National Guard at the Army Aviation Support Facility (AASF) #3 in Mobile, Alabama for 16 years. When the selection decision that is the subject of this litigation was made in August 2001, I was a Staff Sergeant (E-6/SSG) and was assigned to the position of Aircraft Mechanic and held the civilian grade of WG 11. I met Cecil Wiggins when he was in employed at AASF #3 in early 80s. I worked in the same facility as Cecil Wiggins and had an opportunity to personally observe his performance, his assignments, and the preferential treatment he received prior to the selection for the position. He was an E-5 and crew chief on UH-1H helicopters and a medic. He was not in charge of anyone nor did he supervise anyone. He made E-6 in the 1133 med company. Later he made E-7 and transferred to HQ STARC where he had a supervisor, but did not supervise anyone.

2. In the summer of 2001 AASF#3 in Mobile, Alabama had a Military Technician vacancy for an Aircraft Systems Supervisor. The Military Technician Vacancy Announcement Number 01-180 was issued on July 20, 2001 with a closing date of August 9, 2001. The area of consideration for the announcement was statewide and the position was open for all qualified personnel with a military grade of officer, warrant officer, or enlisted.

3. I applied for the position of Aircraft Systems Supervisor and deemed qualified and eligible for the position and referred to the Selecting Supervisor, CW3 Donald MacGregor on Merit Promotion Certificate Number 01-180. I was not selected for the position.

4. Cecil Wiggins was pre-selected for the Aircraft Systems Supervisor and age was part of the reason. Management wanted someone younger who could work longer and Wiggins was given preferential treatment that gave him an unfair advantage in the selection process. As I recall, the Aircraft Systems Supervisor position required 3 years of experience which I know Wiggins did not get it in National Guard or as a Military Technician.

5. While I was employee at AASF#3, I personally observed Cecil getting preferential treatment before the job came open. He was permitted to do numerous other things that weren't offered to other WG-11 mechanics. For example, he was given his own office, which incidentally is the same office he occupies as a result of his selection and was given access to a computer which aided him in the preparation of his application for the Aircraft Systems Supervisor. Wiggins also was not doing aircraft mechanic work because he was put in charge of phase supply, as phase team supervisor. This assignment was not made competitively and although there were other WG-11 mechanics with much more experience, they were not afforded an opportunity for this supervisory experience.

6. Prior to the posting of the Aircraft Systems Supervisor's vacancy, all WG-11 mechanics, including Wiggins were each assigned a UH-60 helicopter. Cecil's aircraft was 009. This aircraft was reassigned from Wiggins to someone else because Cecil had too much other work to do as a result of the temp assignments he received. I complained to my supervisor, Sergeant Major Whitfield about the reassignment of work and told him that I wanted the same supervisory opportunities as Cecil. I told him that among other supervisory skills I wanted to learn was how to do T&As. Unfortunately, I was not given the same opportunities as Cecil nor was anyone else at AASF #3.

7. Cecil was selected before the job was open and no one else had a chance. Mr. MacGregor and Lt Col Bonersera put Cecil in the position to get the job. He played their game and won. They wanted someone younger and he wanted the promotion. With the selection of Wiggins who looks much younger than the other WG-11s, management continued its practice of filling supervisor positions with younger, less experienced people.

8. I know that Mr. MacGregor has said that Mr. Paulk could not be selected because of grade inversion, but grade inversion only appears to be an issue when management doesn't want to select someone for a promotion. If someone they want is selected for a promotion and there is a potential for grade inversion, then they transfer someone to another organization to make the promotion work. I personally know of 1 instance where grade inversion occurred or transfers were made to avoid a grade inversion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 29, 2006.

_____
James Milton

SUSAN B. MOODY
NOTARY PUBLIC
STATE OF ALABAMA
COMM. EXP. 9-18-2007

Susan B. Moody